**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAY LI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-2496 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| J.P. MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jay Li ("Plaintiff") brings suit against Defendant J.P. Morgan Chase Bank, N.A. ("Defendant" or "Chase") for state-law claims arising out of the alleged theft of Plaintiff's valuables from a safe deposit box. Currently before the Court is Defendant's motion to dismiss for failure to state a claim [21]. For the following reasons, Defendant's motion to dismiss [21] is denied. The parties are directed to file a joint status report no later than March 5, 2021, including (a) a statement in regard to whether Plaintiff intends to file a motion for leave to file an amended complaint; (b) a proposed discovery plan, including a fact discovery cutoff date; and (c) a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference.

**I.     Background**

This case was removed from the Cook County Circuit Court on the basis of diversity jurisdiction. See [1]. In the governing complaint, [1-1], Plaintiff alleges the following. Plaintiff is a resident of Chicago while Defendant is headquartered in New York and operates a bank branch at 10 South Dearborn Street in Chicago (the "Bank"). Defendant offers for sale, promotes, and operates safe deposit boxes.

Plaintiff opened a safe deposit box ("Box") with Defendant on August 15, 2018. That day, Defendant charged Plaintiff the first year's annual rent for the Box. Plaintiff attaches to his complaint a copy of his Safe Deposit Box Contract Card ("Contract Card"), which is unsigned. See [1-1] at 9. The Contract Card states that, "By signing the Contract Card, I/we acknowledge receipt of two keys, the JPMorgan Chase Bank N.A. Safe Deposit Box Lease Agreement and Service Confirmation, and agree to be bound by the agreements and terms contained therein, as they may be amended." [14-1] at 2. After opening the Box, Plaintiff deposited the following items in it: (a) a letter containing Plaintiff's TSA Pre-Check number; (b) a ring made in 1937, gifted to Plaintiff by his deceased grandfather to be worn when Plaintiff gets married; (c) an unopened letter from Plaintiff's deceased grandfather, to be opened when he gets married; (d) two Rolex watches gifted to Plaintiff by family members; and (e) $71,200 in cash.

The complaint alleges that on April 12, 2019, Bank manager Andrew Gahan ("Gahan") "authorized the drilling and opening of Plaintiff's safe deposit box for the reason of an 'Emergency Drill.'" [1-1] at 8. "Following the drilling," the complaint alleges, "all valuables in the box were removed and taken by an unknown individual." *Id.* Plaintiff had no knowledge of the drilling when Defendant charged Plaintiff the annual rental fee for the Box on August 15, 2019. On November 6, 2019, Plaintiff visited the Bank to access his Box, "which he believed to be intact and holding his valuables." [1-1] at 8. Gahan and another Bank employee informed Plaintiff at this time that "the box had been drilled, and the contents were gone." *Id.* at 8-9. Plaintiff demanded the return of his valuables or just compensation, but Defendant has failed to date to provide either remedy.

Based on these facts, Plaintiff alleges Illinois state law claims for negligence (Counts I and II) and breach of bailment (Count III).  Currently before the Court is Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim.

## II.    Legal Standard

For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'"  *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'"  *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).  The Court reads the complaint and assesses its plausibility as a whole.  See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

It is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).  Further, although it is well established that a "complaint may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may "consider additional facts set forth in" a brief opposing dismissal "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017,

1019–20 (7th Cir. 2013) (quoting *Geinosky*, 675 F.3d at 745 n. 1); see also *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931, 938–39 (N.D. Ill. 2018) (citing cases).

## III.    Analysis

Defendant moves to dismiss the complaint on the basis that the parties' relationship is governed by a contract, which allegedly forecloses claims based on negligence and breach of bailment. In particular, Defendant attaches to its motion a copy of a Safety Deposit Lease Agreement ("Lease"), which according to Defendant is incorporated by reference into the Contract Card. The Lease contains a limitation of liability clause, which provides in relevant part:

> Limitation of Liability: The lease does not create a bailor and bailee relationship between you and the [Defendant]. We do not have knowledge of and we do not exercise supervision of the box, or the examination or removal of any of its contents. You assume all risks of injury, loss or damage of any kind (including but not limited to loss or damage due to fire, water, other mishap, robbery or burglary) arising out of the deposit in the box, provided we have exercised ordinary care. "Ordinary care" means the implementation by the [Defendant] of access procedures and the use of security precautions deemed by the [Defendant] to be reasonable and appropriate to safeguard the property[…].

Defendant argues that even though Plaintiff did not sign the Contract Card, he assented to be bound by it—as well as by the Lease to which it refers—by paying for the safe deposit box and depositing items in it. Defendant maintains that, as a result, (1) Plaintiff's tort claims for negligence are barred by Illinois' economic loss doctrine; and (2) Plaintiff's bailment claim fails because the Lease disclaims the bailor-bailee relationship and instead creates a landlord-tenant relationship. Defendant further argues that allowing Plaintiff to amend the complaint to add claims for breach of contract, unjust enrichment, breach of implied-in-fact contract, and violation of the Illinois Consumer Fraud Act ("ICFA") would be futile because Plaintiff breached the material terms of the Lease by storing bundles of cash and items in excess of $25,000 aggregate value in the Box.

4

The threshold issue of whether Plaintiff is bound by the Lease cannot be resolved on a motion to dismiss. Plaintiff did not sign the Contract Card, which is the document that purportedly incorporates by reference and binds Plaintiff under the Lease. As both parties recognize, "'a party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it.'" *In re Estate of Adames*, -- N.E.3d --, 2020 WL 6144811, at *8 (Ill. App. Oct. 20, 2020) (quoting *Landmark Properties, Inc. v. Architects International-Chicago*, 526 N.E.2d 603, 606 (Ill. App. 1988)); see also *Welsh v. Jakstas*, 82 N.E.2d 53, 60 (Ill. 1948); *West Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 40 N.E.3d 194, 202 (Ill. App. 2015). However, "'[f]or a course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question.'" *Asset Recovery Contracting, LLC v. Walsh Const. Co. of Illinois*, 980 N.E.2d 708, 725 (Ill. App. 2012) (quoting *Landmark Properties*, 526 N.E. 2d at 606). And "'[w]hether an act is necessary to [the] formation of the contract or the performance of an obligation under the contract depends upon the facts of the case.'" *Id.* (quoting *McAnelly v. Graves*, 126 Ill. App. 3d 528, 532, 81 Ill. Dec. 677, 467 N.E.2d 377 (1984).

The Court does not know enough at this early juncture to determine whether Plaintiff has agreed to be bound by the Lease in general or, more particularly, by its limitation of liability clause. Plaintiff never alleges or admits that he read the Contract Card or that he was aware of, reviewed, or received a copy of the Lease. Discovery may yield evidence supporting Defendant's position that Plaintiff assented to the Lease. But the Court cannot accept that position as a matter of law based on the sparse factual allegations of the complaint (or the briefs)—which do not give even a hint why a bank might allow some unidentified third party to "drill" a safe deposit box and remove its valuable contents with no notice provided to the safe deposit box holder.

Defendant's motion to dismiss Plaintiff's breach of bailment claim depends entirely on the Lease being binding on Plaintiff. The Lease purports to define the parties' relationship as that of landlord-tenant, not bailor-bailee. The common law in Illinois appears to be to the contrary. Older case law addressing the issue holds that "[i]n Illinois the relationship of a safety deposit company to the box owner is that of bailor and bailee." *Paset v. Old Orchard Bank & Trust Co*., 378 N.E.2d 1264, 1269 (Ill. App. 1978); see also *Henderick v. Uptown Safe Deposit Co*., 159 N.E.2d 58, 59 (Ill. App. 1959) (relationship between renter of safe deposit box and safe deposit box company was that of bailor and bailee and, within this relationship, company, as a depositary for hire, was bound to exercise ordinary care and diligence in preservation of renter's property). A bank and its customers may contract otherwise, but of course there must be a contract first. See *Miller v. First Granite City Nat'l Bank*, 110 N.E.2d 651, 652 (Ill. App. 1953) ("the relation between a safety deposit box lessee and the bank is that of bailor and bailee, subject to the terms of the contract between them"). Since the Court cannot determine based on the pleadings whether Plaintiff is bound by the Lease, Defendant's motion to dismiss the breach of bailment claim also is denied.

That leaves the two negligence claims (one based on willful and wanton conduct and gross negligence, and one based on simple negligence), which Defendant contends are both barred by Illinois' economic loss rule. The economic loss rule was adopted by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co*., 435 N.E.2d 443 (1982), a case involving products liability, and "holds that a plaintiff may not recover for solely economic loss in tort." *Fattah v. Bim*, 52 N.E.3d 332, 337 (Ill. 2016). In *Moorman*, the Supreme Court "articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained damage, *i.e*., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and

(3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997); see also *Hecktman v. Pacific Indem. Co*., 59 N.E.3d 868, 873–74 (Ill. App. 2016) ("There are only three recognized exceptions to the Moorman doctrine[.]"). Elaborating on the first exception, the Supreme Court later explained that "the economic loss rule applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997).

In *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246 (Ill. 1986), the Illinois Supreme Court "applied the economic loss rule to claims that services were performed negligently" and "also held that '[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.'" *In re Chicago Flood Litigation*, 680 N.E.2d at 275 (quoting *Anderson,* 503 N.E.2d at 249). "'In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.'" *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001) (quoting *Collins v. Reynard*, 607 N.E.2d 1185, 1188 (1992) (Miller, J., concurring)).

Defendant maintains that Plaintiff "has not alleged, and cannot allege, any of the [three] exceptions to the economic loss doctrine." [14] at 9. Plaintiff apparently concedes this, and the Court agrees that the facts alleged do not appear to fit within any of the three exceptions discussed in *Moorman*. They involve the "nonaccidental" theft of Plaintiff's personal property from the Box

"rather than a dangerous event," and there are no allegations suggesting fraud or negligent misrepresentation. *In re Chicago Flood Litigation*, 680 N.E.2d at 275. Plaintiff argues that the economic loss rule nonetheless does not bar his claims because "plaintiffs may proceed with tort claims against financial institutions as a result of their extra-contractual duties to their depositors despite a written agreement that is in existence." [20] at 9 (citing *Mut. Serv. Casualty Ins. v. Elizabeth State Bank*, 265 F.3d 601, 617-19 (7th Cir. 2001); *Geimer v. Bank of America, N.A.*, 784 F. Supp. 2d 926, 933-35 (N.D. Ill. 2011); *Danqing Huo v. Synchrony Bank*, 2020 WL 2128729 (N.D. Ill. May 5, 2020); *Rogers v. Bank of America, N.A.*, 2010 WL 4384257, *4 (S.D. Ill. Oct. 28, 2010). Defendant contends that these cases are inapplicable here, because they "simply hold that an extracontractual duty may exist in banking with regard to either depository or credit accounts," neither of which are alleged to be at issue in the complaint. [21] at 8, n.4.

The case law cited by Plaintiff is more broadly worded than Defendant portrays it, and not clearly limited to depository or credit accounts. In *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 618 (7th Cir. 2001), the Seventh Circuit explained that, "[a]s with attorneys and accountants, the law has long imposed on banks a duty of reasonable care, and that duty is so entrenched that the UCC does not permit the parties to a banking contract to abandon it." The court held that the economic loss rule did not foreclose breach of contract claims arising out of a bank's alleged negligent failure to observe ordinary care in handling checks, but found it unnecessary to "decide … definitively" whether "a breach of that duty would support a negligence claim in Illinois." *Id*.

District courts in this circuit, applying *Mutual Service Casualty*, have declined to dismiss negligence claims against banks at the motion to dismiss stage. See *Geimer v. Bank of America, N.A.*, 784 F. Supp. 2d 926, 934 (N.D. Ill. 2011) (denying motion to dismiss negligence claim based

8

on bank's alleged negligent failure to prevent unauthorized fund transfers from plaintiff's personal checking and credit accounts "in light of the *Mutual Service Casualty* court's suggestion that an extra-contractual duty between banks and their depositors might permit such a claim"); *Danqing Huo v. Synchrony Bank*, 2020 WL 2128729 (N.D. Ill. May 5, 2020) (same); *Rogers v. Bank of America, N.A.*, 2010 WL 4384257, at *3 (S.D. Ill. Oct. 28, 2010) ("Exercising care in properly crediting deposits to a customer's account so that improper overdraft charges are avoided is a widely-recognized part of this duty of care. Arguably, then, a breach of that duty would support a negligence claim in Illinois."). The Court will follow the same prudent course.

Defendant, citing a single Illinois Appellate Court opinion from 2003, claims that "Illinois courts have already considered and resolved the question of the applicability of the economic loss doctrine to losses in a safe deposit box and held that plaintiff 'cannot recover under a negligence theory.'" [21] at 8 (citing *Jewelers Mut. Ins. Co. v. Firstar Bank Illinois*, 792 N.E.2d 1, 8 (Ill. App. 2003)). But the plaintiff in *Jewelers Mutual* could not "recover under a negligence theory" because he "did not allege willful and wanton conduct or one of the exceptions outlined in *Moorman*." 792 N.E.2d at 8. Here, Plaintiff's first negligence claim is based on alleged willful and wanton conduct, including failing to safeguard Plaintiff's valuables or contact him any time before or after allowing an unknown party drill into the Box and take his property. See [1-1] at 10. And there is no indication in *Jeweler's Mutual Insurance* that the plaintiffs asserted the "extracontractual duty" argument made by Plaintiff here. Further, in that case—which was decided at the summary judgment stage—the holders of the safe deposit boxes "[e]ach signed a form contract" stating that they understood "there shall be no liability on the … bank, for loss of, or injury to, the contents of said box from any cause whatever unless lessee and said bank enter into a special agreement in writing to that effect." 792 N.E.2d at 3. Here, by contrast, Plaintiff

did not sign the Contract Card or the Lease. And even assuming he assented to those contracts' terms, the Lease's limitation of liability clause is not absolute. Rather, it provides that the renter of the box "assume[s] all risks of injury, loss or damage of any kind (including but not limited to loss or damage due to fire, water, other mishap, robbery or burglary) arising out of the deposit in the box, *provided* [Defendant] ha[s] exercised ordinary care." [20] at 3.

Because the Court is denying Defendant's motion to dismiss, it finds it unnecessary to reach Plaintiff's alternative argument that it should be allowed to amend its complaint to allege additional state law claims, including breach of contract. The Court expresses no opinion on whether Plaintiff should do so. If Plaintiff wishes to add these claims, he is free to file a motion for leave to amend, attaching the proposed amended complaint.

## IV. Conclusion

For these reasons, Defendant's motion to dismiss [13] is denied. The parties are directed to file a joint status report no later than March 5, 2021, including (a) a statement in regard to whether Plaintiff intends to file a motion for leave to file an amended complaint; (b) a proposed discovery plan, including a fact discovery cutoff date; and (c) a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference.

Dated: February 16, 2021

Robert M. Dow, Jr.
United States District Judge